# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| TYLIYA J. NELSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:23CV527 |
| | ) | |
| THREE POINTS CENTER, LLC, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

LORETTA C. BIGGS, District Judge.

Plaintiff, Tyliya Nelson (hereinafter "Plaintiff"), brought this lawsuit against Three Points Center, LLC, Three Points Center North Carolina, LLC, Three Points Properties, LLC, Three Points Properties North Carolina, LLC, Three Points Academy, Inc., and Thane Palmer (hereinafter "Defendants"), alleging unlawful retaliatory discrimination under 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964 (hereinafter "Title VII"), codified at 42 U.S.C. §§ 2000e–2000e-17. (ECF No. 1.) Before the Court is Defendants' Motion for Summary Judgment on all claims. (ECF No. 32.) For the reasons stated herein, Defendants' motion for summary judgment will be granted.

## I. BACKGROUND

### A. Factual Background

Plaintiff, Tyliya Nelson, a young African-American woman, (ECF No. 1 at 1), was an employee of a therapeutic boarding school facility, owned and operated by Defendant Three Points Center North Carolina, LLC, (hereinafter "the Facility"), located in Chatham County,

North Carolina.  (*See* ECF Nos. 33-15 at 2; 33-16 at 2; ECF No. 33-12 at 62:1-3.)  Plaintiff was employed at the Facility for five months.  (ECF Nos. 33-15 at 2; 33-26 at 2.)  The Facility serves clients who include adopted teenage girls (hereinafter "the students") who suffer or have suffered from trauma, disorders, depression, or have other specialized care needs, and also serves their families.  (ECF No. 33-4 ¶ 3.)  Plaintiff was hired as a Youth Mentor at the Facility on November 29, 2021, by the Group Living Director, Craig Butcher (hereinafter "Director Butcher").  (ECF Nos.  33-15 at 2; 33-6 ¶¶ 2, 9.)  Youth Mentors are required at all times to accompany the students in the Facility, including in class, individual therapy sessions, and group therapy sessions.  (ECF Nos. 33-3 ¶ 8; 33-4 ¶ 4.)

Youth Mentors are employees of the Group Living department of the Facility and are described as non-clinical and entry-level employees.  (ECF No. 33-7 ¶ 11.)  Youth Mentors are managed by Shift Supervisors and the Group Living Director at the Facility.  (*See* ECF No. 33-10 at 262:22-25; *see also* ECF Nos. 33-1 ¶ 11; 33-3 ¶ 14.)  The Group Living Director oversees the day-to-day "group living" operations, which Youth Mentors are a part of, and is in charge of hiring, firing, promoting and disciplining the Youth Mentors, among others.  (ECF Nos. 33-6 ¶ 7; 33-7 ¶ 11.)  Shift Supervisors have the authority to initiate termination proceedings against Youth Mentors by recommending termination.  (*See* ECF Nos. 33-2 ¶¶ 2, 5, 6–7.)  If the termination recommendation is approved by the Group Living Director, a Youth Mentor could be terminated.  (*See* ECF No. 33-2 ¶¶ 5, 6–7.)  The record reflects that Shift Supervisor Daniel Gschwind was Plaintiff's immediate supervisor and that Plaintiff understood Shift Supervisor Gschwind to be her supervisor.  (*See* ECF Nos. 33-2 at 5, 6–7; 33-10 at 262:22-25; 33-18 at 6–7.)  One other Shift Supervisor who is relevant to the facts of this case, is Hannah Locke.  (ECF Nos. 33-1 ¶ 11; 33-3 ¶¶ 3, 14.)

2

When Plaintiff was onboarded on December 6, 2021, she reviewed and signed several employment documents. (ECF Nos. 33-15 at 2; 33-17 at 2–7.) By signing, Plaintiff was "agreeing and acknowledging that [she] will read and follow the policies and procedures" contained therein. (ECF No. 33-19 at 2; *see also* ECF Nos. 33-8 ¶¶ 7, 11; 33-17 at 7.) One document was titled "Welcome to Three Points Center and Resource Management, Inc." (hereinafter "Employee Handbook").[1] (ECF No. 33-18 at 1.) Another document was titled, "Policy and Procedures Manual" (hereinafter "Employee Manual").[2] (ECF No. 33-19 at 1.) The Employee Handbook and Manual were accessible to Plaintiff throughout her employment. (ECF No. 33-8 ¶ 15; *see also* ECF No. 33-19 at 2.)

For approximately the first month of her work at Three Points North Carolina Plaintiff assisted other staff in setting up the center for the arrival of the students. (ECF No. 33-10 at 89:3-9.) Beginning in January 2022, students arrived at the Facility, and Plaintiff began her duties as a Youth Mentor. (*See* ECF No. 33-13 at 121:9-12.) On February 21, 2022, Plaintiff, after being provided with her 90-day evaluation, met with Director Butcher about her performance assessment. (ECF No. 33-11 at 85:11-23, 111:4-22.) Plaintiff's 90-day evaluation stated in relevant part that according to Director Butcher Plaintiff's attendance/punctuality,

---

[1] The Employee Handbook provides that employees are "expected to be available and ready to work at the established starting time and are expected to remain at work and perform [their] work assignments during [their] shift." (ECF No. 33-18 at 6.) "Failure to comply with [the attendance] policy will result in disciplinary action up to and including termination of employment." (*Id.*) Further, the Employee Handbook provides that "[f]requent absences or tardiness will not be tolerated and are subject to disciplinary action up to and including termination of employment." (*Id.*)

[2] The Employee Manual outlines when attendance violations (known as "occurrences") may result in disciplinary actions for employees. (ECF No. 33-19 at 4.) An occurrence is defined as an employee being "documented as an absence or a late," among other things including an absence, arriving twice late to work, leaving work early twice, failing twice to clock in or out. (*Id.*) Further, a single day of "no call/no show" can either be a one occurrence or two occurrences. (*Id.*)

3

dependability/reliability, job knowledge, job quality, and cooperation were "satisfactory," and all other categories of evaluation were "very good." (ECF No. 33-20 at 2–3.) On February 22, 2022, Notwithstanding the attendance issues documented in her evaluation, Plaintiff received a raise. (ECF No. 33-11 at 165:18-24, 166:12–167:5.)

Also on February 22, 2022, Shift Supervisor Gschwind issued an attendance write-up to Plaintiff. (*See* ECF No. 33-21 at 2; *see also* ECF No. 33-11 at 125:13-17.) The attendance write-up stated that Plaintiff was late, in excess of fifteen minutes, on February 8, 2022, and February 20, 2022. (ECF No. 33-21 at 2.) The attendance write-up further stated that Plaintiff left twenty-one minutes early without approval from her supervisor.[3] (*Id.*) Finally, the write-up states "[Plaintiff] has received a written warning. The next occurrence will result in a final written warning. Any occurrence after will result in termination." (*Id.*) The document is signed and acknowledged by Plaintiff and Shift Supervisor Gschwind. (*Id.*) Plaintiff's work absences were not restricted to those reflected in her February 22, 2022, write-up. (*See* ECF No. 33-22 at 2.) Although Plaintiff was written up for her tardiness when greater than fifteen minutes, in total she was "late" as defined by the employee attendance policy twice in January 2022 and nine times in February 2022. (*Id.*)

Plaintiff was late again three times in March 2022. (*Id.* at 2–3.) The record reflects that Shift Supervisor Gschwind wanted to fire Plaintiff in March 2022. (ECF No. 33-2 ¶¶ 6–7.) However, Director Butcher declined to accept Shift Supervisor Butcher's termination recommendation at that time. (*Id.*) Subsequently, Plaintiff was also late twice in the four days she worked in April, including on April 5, 2022. (ECF No. 33-22 at 4.) The record reflects

---

[3] Plaintiff's official timecard for her on-site employment also reflects Plaintiff leaving before the end of her scheduled shift several other times, but this write-up is the only instance where Plaintiff is documented to have left without permission from her supervisor. (ECF No. 33-22 at 2.)

that Plaintiff was absent more than her Youth Mentor contemporaries, and those who had absence records that were similar to Plaintiff were suspended or fired. (ECF Nos. 33-24 at 2; 33-25 at 2–3; 38-16 at 10–11, 12; 38-9 at 3–5.)

Several occurrences transpired on April 5 that are relevant to this action. The first involved Defendant Palmer, a licensed marriage and family therapist and the Program and Clinical Director of the Facility. (ECF No. 33-7 ¶ 2.) Defendant Palmer organized a group therapy session between the students and clinicians[4] to discuss on-going tensions between students at the school about using a racial epithet, specifically the "N" word, among other issues. (ECF Nos. 33-4 ¶¶ 6–7; 33-13 at 135:7-12, 136:7–137:5, 137:13-17.) Because all the students were in attendance, several Youth Mentors accompanying them were also there. (ECF No. 33-3 ¶10.) During the session, when Defendant Palmer was admonishing all students that they should not call anyone the "N" word or otherwise use the word, he said the following: "nobody is calling anyone a ["N" word] here." (ECF Nos. 33-4 ¶ 7; 33-3 ¶ 11; *see also* 33-1 ¶ 8.) Defendant Palmer did not say the "N" word again during the session and apologized to staff for saying it on that occasion. (ECF No. 33-1 ¶¶ 6, 9; 33-4 ¶ 7; 33-3 ¶ 11.) Palmer's use of the "N" word during this April 5, 2022, session will hereinafter be referred to as "the Incident."

Plaintiff was not present for the Incident; she was offsite escorting a student to an appointment. (ECF No. 33-3 ¶ 12; *see also* ECF No. 33-32 at 2–3.) Another Youth Mentor, Sharecka Brewer, was present at the meeting and told Plaintiff over text about the Incident, however, Sharecka Brewer also stated under oath that she did not actually hear Defendant

---

[4] As the Program and Clinical Director of the Facility, Defendant Palmer supervised the clinical operations of the Facility, namely the in-house licensed therapists who met with students. (ECF No. 33-7 ¶¶ 8, 14.)

Palmer say the "N" word. (ECF No. 33-1 ¶¶ 6–7; *see also* ECF No. 33-32 at 2.) Upon Plaintiff and the student's return to the Facility, the session was still occurring, so Plaintiff began to record it. (ECF No. 33-10 at 242:20–243:5.) Plaintiff stated that she intended to get Defendant Palmer to say the "N" word again while she was recording, but it did not occur. (*Id.*) Plaintiff alleges recording this part of the session was protected activity under Title VII. (ECF No. 36 at 11.)

A second occurrence transpired later in the afternoon of April 5, 2022, Shift Supervisor Locke and Plaintiff, among others, were involved in a verbal altercation that took place, in part, in front of students. (ECF Nos. 33-1 ¶ 11; 33-3 ¶ 14; *see also* ECF No. 33-39 at 2:6–6:25.) Shift Supervisor Locke states that she "confronted Plaintiff for either leaving the girls unattended in a computer room or leaving the girls unattended with a laptop," providing unapproved food to students when not permitted to do so, and Plaintiff's attitude among other things. (ECF Nos. 33-3 ¶ 14; 33-39 at 2:6–6:25; 33-10 at 145:18–146:5.) Plaintiff and other Youth Mentors on her shift were told they would be written up for their conduct. (ECF No. 33-10 at 145:18–146:5.) The other Youth Mentors reprimanded included Sharecka Brewer, who is Black, and Charlie Brackett and Avery McLaurin, who are white. (*Id.* at 146:6–20.)

After being informed, on either the evening of April 5 or the morning of the April 6, of the confrontation that occurred between the Youth Mentors, to include Plaintiff, and Shift Supervisor Locke, Plaintiff's Shift Supervisor Gschwind informed Director Butcher, and then Plaintiff and the other Youth Mentors involved, that these Youth Mentors would be written up for what occurred. (ECF Nos. 33-2 ¶ 11; 33-31 at 5; *id.* at 145:18–146:5.) Shift Supervisor

6

Gschwind also reviewed Plaintiff's timecard and discovered Plaintiff arrived late for work on April 5, 2022. (ECF No. 33-2 ¶ 14.)

The morning of April 6, 2022, Shift Supervisor Gschwind recommended Plaintiff's termination to Director Butcher because of her attendance violations and the interactions she had with Supervisor Locke and Youth Mentor Charlie Brackett on April 5, 2022. (ECF Nos. 33-2 ¶ 14; 33-6 ¶ 15.) Director Butcher stated that he would approve Shift Supervisor Gschwind's termination recommendation if it was supported by Plaintiff's timecards, and further he asked for documentation. (ECF Nos. 33-2 ¶ 14; 33-6 ¶ 15.) Shift Supervisor Gschwind then proceeded to collect that documentation. (ECF No. 33-2 ¶ 15.) Also, at 7:42 AM on the morning of April 6, 2022, Plaintiff sent a group text message; the group was comprised of Youth Mentors, Charlie Brackett, Avery McLaurin, and Sharecka Brewer, Shift Supervisors Locke and Gschwind, and Director Butcher. (ECF Nos. 33-34 at 2–3; 33-10 at 261:5–262:7.) Plaintiff's message to the group stated:

> "Hey heads up if we do something that 'supervisors' don't like please say something then don't wait until the next day. [C]orrect us then and also let's not just take a supervisors[sic] word on something without further investigation and remember I don't have to be your friend you're my boss and I will be respectful to u[sic] but that does not make us buddy buddy so don't say I'm being disrespectful because I don't talk to you in that way :) and last but not least any problems with me please speak on it [emoji depicting salute]."

((ECF No. 33-34 at 2.)

Director Butcher offered to meet one-on-one with Youth Mentors about the subject of Plaintiff's message. (*Id.* at 3; ECF No. 33-1 ¶ 13.) Shift Supervisor Gschwind was not part of these meetings. (ECF No. 33-2 ¶ 13.) According to the text message, Director Butcher's meeting with Plaintiff was scheduled for 11:00 AM. (ECF No. 33-34 at 3.) Plaintiff recorded this meeting. (ECF Nos. 33-38; 33-39.)

7

Plaintiff began this meeting by discussing in detail the interactions and disagreements between her, the Youth Mentors, and Shift Supervisor Locke on April 5, 2022. (ECF No. 33-39 at 2:6—6:25.) Next, Plaintiff began to talk about the conduct of another Youth Mentor, Charlie Brackett, whom she believes is kowtowing to Shift Supervisors. (*Id.* at 7:1–8:1.) Then, Plaintiff began discussing the Incident involving Defendant Palmer. (*Id.* at 8:2–9:4.) Plaintiff quotes this part of the meeting when alleging she engaged in protected activity under Title VII. (ECF No. 36 at 11.) This portion of the conversation was about a minute long. (*See* ECF No. 33-38.) The entire meeting was approximately 30 minutes long. (*See id.*) Because of the importance of this portion of their conversation to her claims, what Plaintiff and Director Butcher discussed in that part of the meeting is reflected in more detail below.

In the afternoon of April 6, 2022, Shift Supervisor Gschwind presented Director Butcher with a write-up and Plaintiff's timecards to support his recommendation of termination. (ECF Nos. 33-2 ¶ 15; 33-6 ¶ 16.) Shift Supervisor Gschwind's write-up and termination notice reflected five of Plaintiff's late appearances across March and April, and notes Plaintiff calling out on March 30, 2022, without coverage. (ECF Nos. 33-26 at 2; 33-3 ¶ 13.) The write-up also notes that the assigned corrective action for Plaintiff was her termination. (*Id.*) After being presented this documentation, Director Butcher approved Shift Supervisor Gschwind's recommendation. (ECF No. 33-6 ¶ 16.) Plaintiff was fired on April 6, 2022, and her termination and notice of termination were written and delivered to her at the end of shift, by Shift Supervisor Gschwind. (ECF Nos. 33-26; 33-2 ¶ 15.)

As a result of her firing, Plaintiff brings two retaliation claims against several defendants, including one individual, Thane Palmer (hereinafter "Defendant Palmer"), and five business entities. (ECF No. 1 ¶¶ 9–32.) She brings her § 1981 retaliation claim against

Defendant Palmer.  (*See id.* ¶¶ 93–112.)  In addition, she brings her Title VII claim against five entities, Three Points Center, LLC, Three Points Center North Carolina, LLC, Three Points Properties, LLC, Three Points Properties North Carolina, LLC, Three Points Academy, Inc. (hereinafter "Defendant Entities").  (*Id.* ¶¶ 113–22.)

## B.    Procedural History

Because Defendants have raised evidentiary and procedural objections to the filings for the instant motion, the procedural history of the filings before this Court will be discussed in some detail.  On June 9, 2022, Plaintiff filed her initial Charge of Discrimination with the Equal Employment Opportunity Commission (hereinafter "EEOC").  (ECF No. 33-29 at 2.)  On June 29, 2023, Plaintiff filed her Complaint alleging retaliatory discharge under Title VII and 42 U.S.C. § 1981.  (ECF No. 1 at 1.)  On August 25, 2023, Defendants collectively filed their Answer to this Complaint.  (ECF No. 7.)

Following discovery, on May 20, 2024, Defendants collectively filed their Motion for Summary Judgment on both of Plaintiff's claims of retaliatory discharge.[5]  (ECF No. 32.)  On May 28, 2024, Plaintiff filed an Unopposed Motion for Extension of Time to File her Response to Defendants' Motion for Summary Judgment.  (ECF No. 34 at 1.)  The next day, Plaintiff's Motion was granted by this Court's Magistrate Judge, and Plaintiff was given up to and including July 22, 2024, to file her Response.  (Text Order May 29, 2024.)  At 11:58 PM on July 22, 2024, Plaintiff filed her Response in Opposition to Defendants' Motion for

---

[5] If summary judgment were denied, Defendants made the following arguments in the alternative: (1) Plaintiff's claim for front pay to be denied based on the after-acquired evidence defense; (2) Plaintiff's claim for back pay should be limited based on the after-acquired evidence defense; (3) Plaintiff is not entitled to punitive damages; and that (4) TPC Utah, TP Properties Utah, TP Properties North Carolina, TPA should be dismissed from the action because Plaintiff cannot raise a genuine issue of fact to support that they were her "integrated employer" or that Defendant Palmer was involved in her termination.  (ECF No. 32 at ¶¶ 5–7.)

9

Summary Judgment, (ECF No. 36), with 11 exhibits attached, (ECF Nos. 36-1–36-11). (Notice of Electronic Filing July 22, 2024.)

At 12:58 AM on July 23, 2024, Plaintiff's counsel sent an email to Defendants' counsel and an email address for this Court. (ECF No. 45-1 at 1.) In this email, Plaintiff's counsel stated that he would like to "withdraw or strike [a footnote] of [his] pleading before motions are referred or opposing counsel responds officially." (*Id.*) Though not reflected on this Court's docket, a member of the Court Clerk's Office responded and said that Plaintiff's counsel would need to have its request addressed through an amended filing.

At 1:18 AM on July 23, 2024, Plaintiff filed her Certificate of Service for her Response in Opposition to Motion for Summary Judgment, (ECF No. 37). (Notice of Electronic Filing of Certificate of Service July 23, 2024.) Plaintiff's filing included an email chain and attachment "Plaintiff's Summary Judgment Exhibit Index" which reflected 33, not 11, exhibits. (ECF No. 37 at 3–4.) The email chain reflected two messages from Plaintiff on July 22, 2024, to Counsel for Defendants. (*Id.* at 2.) In the first message, at 11:49 PM, Plaintiff's counsel states he is "not adding any more which [sic] why I'm sending this. It's the exhibit upload that got me. See attached for our records. I'm getting the brief in before 12 and then will have to correct and clean up my filing." (*Id.*) In the second message, at 11:52 PM, Plaintiff's counsel states "Also, I'm serving the deposition transcripts conventionally. I highlighted my PDF and I could not get my comments deleted efficiently. See attached for the record." (*Id.*) Plaintiff's counsel did not explain the untimeliness of this Certificate of Service.

At 3:03 AM on July 23, 2024, Plaintiff made an additional filing which included 33 attachments, (ECF Nos. 38-1–38-33), which appear to be the 33 exhibits Plaintiff referred to

in the earlier filed index, (ECF No. 37 at 3–4). Plaintiff's counsel did not explain the untimeliness of her filing of these additional exhibits.

At 5:24 PM on July 23, 2024, Plaintiff made an additional filing, (ECF No. 39), and represented that its purpose was to include the entirety of four depositions of Defendants' employees Director Butcher, Norm Thibault,[6] Defendant Palmer, and Heidi Palmer[7] in the summary judgment record. (Notice of Electronic Filing of Transcripts July 23, 2024; *id.* at 1.) Plaintiff purportedly made this filing pursuant to Federal Rule of Civil Procedure 32(a)(6),[8] arguing that because Defendants had included excerpts of these depositions in their Motion for Summary Judgment, she filed the depositions in their entirety. (ECF No. 39 at 1.) Plaintiff's counsel also did not explain the untimeliness of this filing.

On July 25, 2024, Plaintiff, without moving for Leave from this Court to do so, filed an Amended Response in Opposition to Defendants' Motion for Summary Judgment. (ECF No. 40 at 1.) This filing also included an amended Exhibit Index. (ECF No. 40-1.) On July 31, 2024, Defendants collectively filed their Reply in Support of their Motion for Summary Judgment. (ECF No. 41.) In addition to responding to Plaintiff's arguments, Defendants made several evidentiary objections to Plaintiff's filings on the grounds of this District's local

---

[6] At the time of Plaintiff's employment, Norm Thibault was the CEO of TPC Utah and TPC North Carolina. (ECF No. 33-9 ¶ 2.)

[7] Heidi Palmer was the Human Resources Director at the Facility at the time of Plaintiff's employment. (ECF No. 33-8 ¶ 2.)

[8] This rules states: "If a party offers in evidence only part of a deposition, an adverse party may require the offeror to introduce other parts that in fairness should be considered with the part introduced, and any party may itself introduce any other parts." Fed. R. Civ. P. 32(a)(6). However, Plaintiff's filing did not make any showing of why "in fairness" the entirety of these four depositions must be included in the record and did not ask Defendants to make such a showing. (ECF No. 39 at 1.) Accordingly, this Court declines to consider these depositions, (39-1, 39-2, 39-3, 39-4), to the extent they are not already excerpted and cited, for the resolution of the instant summary judgment motion.

11

rules, including the admissibility of Plaintiff's exhibits under the Federal Rules of Evidence. (*Id.* at 1, 2, 2 n.1.) Defendants also objected to Plaintiff filing an Amended Response in Opposition to Defendants' Motion for Summary Judgment. (*Id.* at 2 n.2.) Defendants raised these objections a second time in later filings related to their Motion to Strike, (ECF No. 45 at 2–4), which was resolved by a separate Order, (ECF No. 60).

## II. DEFENDANTS' OBJECTIONS TO PLAINTIFF'S FILINGS OPPOSING SUMMARY JUDGMENT

As a threshold matter, before this Court can address the merits of Defendants' Motion for Summary Judgment, it must first address several procedural and evidentiary objections raised by Defendants to Plaintiff's filings made in response to Defendants' motion.

### A. Procedural Objections

#### 1. The Timeliness of Plaintiff's Summary Judgment Filings

Defendants challenge Plaintiff's Response in Opposition to Defendants' Motion for Summary Judgment as "untimely," arguing that Plaintiff's brief, exhibits, and certificates of service were not completely filed until the evening of July 23, 2024, one day after the filing deadline. (ECF No. 41 at 2, 2 n.1.) Defendants further object to Plaintiff filing an Amended Response on July 25, 2024, two days after Plaintiff's counsel represented on July 23, 2024, he found a mistake in his original filing. (*Id.* at 2 n.1.)

This District's Local Rules provide that the "failure to file a brief or response within the time specified in this rule shall constitute a waiver of the right thereafter to file such brief or response, except upon a showing of excusable neglect." L.R. 7.3(k). Further, Federal Rule of Civil Procedure 6(b) provides that "[w]hen an act may or must be done within a specified time, the court may, for good cause, extend the time . . . with or without motion or notice if the court acts, or if a request is made, before the original time or its extension expires; or on

12

motion made after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(A)–(B).

Here, Plaintiff did not request an additional extension of time to file her Response. Thus, under Federal Rule of Civil Procedure 6(b) and Local Rule 7.3(k), Plaintiff has waived her right to respond to Defendants' summary judgment motion unless she can, by motion, establish that her filings should be still considered because of "excusable neglect." Fed. R. Civ. P. 6(b)(1)(B); L.R. 7.3(k). However, Plaintiff has not made such a motion for the filings made after her extended deadline, including the Amended Response in Opposition to Defendants' Motion for Summary Judgment. The Court therefore finds that Plaintiff's amended response to Defendants' motion for summary judgment is untimely and will not be accepted.[9] Plaintiff's timely filed Response in Opposition to Defendants' Motion for Summary Judgment (hereinafter "Response in Opposition"), (ECF No. 36), will be considered by this Court for the instant motion for summary judgment.

As for the exhibits supporting Plaintiff's Response, (ECF Nos. 38-1–38-33), though they were untimely filed on ECF, the record reflects that Defendants were sent those exhibits via email before the filing deadline. (ECF No. 37 at 2.) Moreover, Defendants had ample enough time to file both their Reply Brief and accompanying evidentiary objections to Plaintiff's later filed Response exhibits, (ECF Nos. 38-1–38-33). (ECF No. 41 at 4–6.) Therefore, this Court finds that, with respect to the 33 exhibits, any prejudice to Defendants was, at best, *de minimis. See, e.g., Khouri v. Nat'l Gen. Ins. Mktg., Inc.,* No. 1:20CV580, 2021 WL 1923763, at *3 (M.D.N.C. Mar. 5, 2021) (allowing a late filing on similar grounds); *Davis v. Old*

---

[9] The Court, upon review of the two responses filed by Plaintiff, finds that the difference between Plaintiff's two Responses in Opposition were minimal, the only substantive change being a deleted a footnote. (*Compare* ECF No. 36 *with* ECF No. 40.)

*Dominion Tobacco Co., Inc.*, No. 2:09CV603, 2010 WL 11565856, at *2 (E.D. Va. Oct. 13, 2010) (same). Accordingly, the Court will consider the exhibits supporting Plaintiff's Response, (ECF No. 38-1–38-33), filed on July 23, 2024.

2. <u>The Length of Plaintiff's Response Brief</u>

Defendants object to the length of Plaintiff's Response in Opposition because it incorporates a discovery brief, an image of a deposition transcript page, and two exhibits. (ECF No. 41 at 2 n.1; *see also* ECF No. 45 at 3–4.) Plaintiff admits that incorporating the discovery brief is against this District's Local Rules but asks "that the [C]ourt exercise its discretion to consider a previously filed motion prior to the close of discovery" for the resolution of Defendants' Motion for Summary Judgment. (ECF No. 36 at 26 n.9 (citing Fed. R. Civ. P. 56(c)(3))[10].)

This District's Local Rules provide that "[e]xcept with the Court's prior permission, briefs prepared on a computer in support of motions and responsive briefs shall not exceed 6,250 words." L.R. 7.3(d)(1). This word count includes "the body of the brief, headings and footnotes." *Id.* The Local Rules also provide that "[a] party may not incorporate by reference arguments made in another brief or file multiple motions to circumvent these limits." L.R. 7.3(d)(3). "The word limitations imposed by the Local Rules serve to facilitate the equitable and efficient adjudication of motions by the Court." *Williamson v. Prime Sports Mktg., LLC*, No. 1:19CV593, 2022 WL 5180420, at *2 (M.D.N.C. Feb. 28, 2022) (citation and internal quotation marks omitted). For this reason, the remedy for such violations is often striking the offending documents. L.R. 83.4(3); *see, e.g., id.*

---

[10] Federal Rule of Civil Procedure 56(c)(3) states "[t]he court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

As earlier stated, Plaintiff admits to violating the Local Rules by requesting that this Court consider a discovery brief that it incorporated in its Response in Opposition by reference. (ECF No. 36 at 26 n. 9.) Plaintiff's discovery brief, therefore, will not be considered for the resolution of Defendants' Motion for Summary Judgment. Similarly, Plaintiff did not request Leave from this Court to permit her Response in Opposition to exceed 6,250 words. However, because of the advanced stage of the litigation, instead of striking the entirety of Plaintiff's Response in Opposition, this Court will disregard the portions of the document which blatantly violates the Local Rules, specifically where Plaintiff pasted a deposition page into its Response in Opposition. (ECF No. 36 at 3, 16.)

## B. Defendants' Evidentiary Objections to Plaintiff's Response in Opposition

Defendants challenge seven exhibits supporting Plaintiff's Response in Opposition, (ECF No. 38-6, 38-11, 38-12, 38-15, 38-18–38-19, 38-25), pursuant to Federal Rule of Civil Procedure 56(c)(2) and this District's local rules. (ECF No. 41 at 4–6 (citing Fed. R. Civ. P. 56(c)(2); L.R. 7.6).) Defendants request that this Court strike the challenged exhibits or otherwise disregard them in its resolution of Defendants' Motion for Summary Judgment. (*See id.* at 4, 6.) Plaintiff argues that Defendants' objections should be overruled because "the objections raised are not convincing [and] are contrary to the aims of the rules and applicable precedent governing the motions and arguments currently pending before the Court." (ECF No. 43 at 2 (citations omitted).)

Federal Rules of Civil Procedure 56(c) provides in relevant part, "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A). In assessing a summary judgment motion, a court is entitled to consider only the evidence that would be admissible at

15

trial. *Kennedy v. Joy Techs., Inc.*, 269 F. App'x 302, 308 (4th Cir. 2008) (citing *Maryland Highways Contractors Ass'n, Inc. v. State of Maryland,* 933 F.2d 1246, 1251 (4th Cir. 1991)). Therefore, "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2).

Under this District's local rules, "a party may assert evidentiary objections in its . . . reply memorandum to factual allegations contained in . . . replies." L.R. 7.6. "A district court possesses broad latitude in ruling on the admissibility of evidence" and rulings are reviewed for an abuse of discretion. *Kennedy*, 269 F. App'x at 308 (citing *GE v. Joiner,* 522 U.S. 136, 141–42 (1997)).

The Court will address the parties' arguments for the evidentiary objections in turn.

1.  Defendants' Objection to Plaintiff's Exhibit, (ECF No. 38-6), is Sustained

This objection pertains to a page of one of Plaintiff's exhibits, (ECF No. 38-6 at 3), which Defendants challenge under Federal Rules of Evidence 901 and 403. (ECF No. 41 at 6.) The page is a spreadsheet which purports to compile a list of former employees at TPC North Carolina, who hired those employees, if those employees were fired or quit, their length of employment, their total hours spent on the job, and other notes. (ECF No. 38-6 at 3.)

Defendants argue that this spreadsheet, (*id.*), should be stricken and disregarded by this Court because the information it contains was created by Plaintiff's counsel, includes Plaintiff's counsel's commentary, and cites to "exhibits" but does not identify the exhibit by number. (ECF No. 41 at 6.) Plaintiff's counsel admits to creating the spreadsheet and including his commentary in it, but he characterizes his commentary as "benign." (ECF No. 43 at 9.) Plaintiff's counsel also provided an updated version of the spreadsheet, (ECF No. 43-4 at 2), to fill the previously blank citations, (ECF No. 38-6 at 3). Plaintiff's counsel argues

16

Defendants' remaining objections are "trivial," and that there "appears to be nothing misleading, confusing or unfairly prejudicial about" the challenged exhibit. (ECF No. 43 at 9.)

The Court views the principal issues with the challenged exhibit, (ECF No. 38-6), to be whether it can be authenticated and by whom it must be authenticated. The Federal Rules of Evidence provide that authentication of evidence requires "the proponent [to] produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). Although the spreadsheet, (ECF No. 38-6 at 3), was created by referencing discovery evidence, it is Plaintiff's counsel who created the document and wrote the commentary therein. (ECF No. 43 at 8.) Therefore, at a trial, only Plaintiff's counsel could testify to its authenticity, and he would likely rely on hearsay to testify to the spreadsheet's authenticity, both actions being impermissible. Therefore, this Court finds that the spreadsheet in the challenged exhibit, (ECF No. 38-6 at 3), cannot be presented in a form admissible at trial as Rule 56 requires, and thus the exhibit cannot be considered for Defendants' Motion for Summary Judgment. Fed. R. Civ. P. 56(c)(2).

### 2. Defendants' Objection to Plaintiff's Exhibit, (ECF No. 38-11), is Sustained

This objection pertains to Plaintiff's exhibit, (ECF No. 38-11), which Defendants challenge under Federal Rules of Evidence 403, 404, 405, and 802. (ECF No. 41 at 6.) The challenged exhibit, (ECF No. 38-11), is the first page of an online newspaper article, written by a non-party and dated August 12, 2022; it is titled: "Three Utah teen treatment centers disciplined for assaults, 'unnecessary' seclusion and painful restraints." (ECF No. 38-11 at 2.) The article is mostly redacted, and no sealed version is available for the Court's review. (*Id.*)

Defendants argue that this challenged exhibit, (ECF No. 38-11), should be stricken and disregarded by this Court on the grounds of the rules of evidence listed above, however, Defendants do not explain further. (ECF No. 41 at 6.) Plaintiff does not explain why this challenged exhibit, (ECF No. 38-11), should survive Defendants' evidentiary objection however, requests that the exhibit be considered by the Court. (ECF No. 43 at 11.) Rather, Plaintiff "requests that the court consider any probative information in [this exhibit] and any other relevant evidence 'in the record.'" (*Id.* (citation omitted).)

The challenged exhibit, (ECF No. 38-11), regardless of the amount redacted, is likely hearsay. *See* Fed. R. Evid. 801(c)(1)(2). The Fourth Circuit has consistently held that newspaper articles are hearsay when used to prove the factual matters asserted therein. *United States v. ReBrook*, 58 F.3d 961, 967 (4th Cir. 1995), *abrogated on other grounds by Neder v. United States*, 527 U.S. 1 (1999); *see also Greene v. Scott*, 637 F. App'x 749, 751–52 (4th Cir. 2016) (citing *Nooner v. Norris*, 594 F.3d 592, 603 (8th Cir. 2010)). Plaintiff has not provided an affidavit from the declarant, the article's writer, certifying that the actions and allegations contained in the article occurred; yet Plaintiff appears to be offering the article as proof of the allegations against Defendants' therapeutic boarding schools. Further, Plaintiff has not asserted this article falls under an exception to the hearsay rule. (*See* ECF No. 43 at 11.) Therefore, this Court concludes that Plaintiff's exhibit, (ECF No. 38-11), is inadmissible hearsay. *See* Fed. R. Evid. 801(c)(1)–(2). Accordingly, the challenged exhibit cannot be considered for Defendants' Motion for Summary Judgment. *Maryland Highways Contractors Ass'n v. Maryland*, 933 F.2d 1246, 1251 (4th Cir. 1991) (citations omitted).

### 3. Defendants' Objection to Plaintiff's Exhibit, (ECF No. 38-12), is Sustained

This objection pertains to Plaintiff's exhibit, (ECF No. 38-12), which Defendants challenge under Federal Rules of Evidence 403, 404, 405 and 802. (ECF No. 41 at 6.) The challenged exhibit, (ECF No. 38-12), appears to be a July 27, 2022, letter from the Utah Department of Human Services Office of Licensing, purporting to place TPC Utah's Residential Treatment License on "Conditional Status" for violations of several Utah Administrative Rules. (ECF No. 38-12 at 2.) The letter is largely redacted and there is no sealed version available for the Court's review. (*See generally id.*)

Defendants argue that this challenged exhibit, (ECF No. 38-12), should be stricken and disregarded by this Court on the grounds of the rules of evidence listed above, but do not explain further. (ECF No. 41 at 6.) Plaintiff again does not explain why this challenged exhibit, (ECF No. 38-12), should survive Defendants' evidentiary objection but asks that it be considered by the Court. (ECF No. 43 at 11.) Defendants' hearsay objection is the most pressing to this Court for the instant motion. *See Maryland Highways Contractors*, 933 F.2d at 1251.

The letter contained in the challenged exhibit, (ECF No. 38-12), is an out of court statement, Fed. R. Evid. 801(c)(1), and Plaintiff does not explain if this document is being offered for the truth of the matter asserted. (ECF No. 43 at 11.) Because Plaintiff has not identified the relevance of this exhibit, the Court therefore is unable to assess Plaintiff's purpose in offering this exhibit. (*Id.*) Yet, upon the Court's own review of the challenged exhibit, its only conceivable purpose is to make a characterization about TPC Utah and the operation of its therapeutic boarding school, (*See* ECF No. 38-12), which would be a use for the truth of the matter asserted and would therefore be hearsay. Fed. R. Evid. 801(c)(2).

19

Plaintiff does not argue the challenged exhibit falls under a hearsay exception, nor does the Court so find. (ECF No. 43 at 11); *see* Fed. R. Evid. 803(8)(A)(i)–(iii). Accordingly, because the challenged exhibit, (ECF No. 38-12), is inadmissible hearsay, it cannot be considered for Defendants' Motion for Summary Judgment. *Maryland Highways Contractors*, 933 F.2d at 1251.

4.   Defendants' Objection to Plaintiff's Exhibit, (ECF No. 38-15), is Sustained

This objection pertains to Plaintiff's exhibit, (ECF No. 38-15), which Defendants challenge under Federal Rules of Evidence 901, 801, 602, and 403. (ECF No. 41 at 5.) The challenged exhibit, (ECF No. 38-15), appears to be a letter from a law firm addressed to TPC Utah regarding a "Demand for Action" from some members of TPC Utah's limited liability corporation in response to alleged embezzlement by a non-party, Glenn Thibault, the former Financial Officer of TPC Utah. (ECF Nos. 38-15 at 2; 41 at 5.)

Defendants argue that this challenged exhibit, (ECF No. 38-15), should be stricken and disregarded by this Court because it cannot be authenticated, is inadmissible hearsay, and could confuse or mislead the factfinder. (ECF No. 41 at 5 (citing Fed. R. Evid. 403, 602, 801, 901).) Plaintiff only addresses Defendants' hearsay objection, arguing that Defendants "hearsay argument . . . can be ignored" because the challenged exhibit falls under hearsay exceptions. (ECF No. 43 at 6.) Plaintiff argues that "while the letter was written on behalf of a non-party the Defendants 'manifested' a belief that the letter's statements about [former TPC Utah CFO Glenn Thibault] were 'true'" making it admissible. (*Id.* (citing Fed. R. Evid. 801(d)(2)(b)[11].)

---

[11] The Court notes that Federal Rule of Evidence 801(d)(2)(b) outlines a statement that is not hearsay, rather than being a hearsay exception. This exclusion covers statements by a party opponent that the party "manifested that it adopted or believed to be true." Fed. R. Evid. 801(d)(2)(b). To support this argument, Plaintiff argues this letter prompted a lawsuit, but she provided no evidence of this lawsuit that this letter prompted. (ECF No. 43 at 6.) Therefore, there is no indication in the record that any of the Defendants "manifested that it adopted or believed [this letter] to be true," and therefore Plaintiff cannot use this hearsay exclusion to admit the challenged exhibit, (ECF No. 38-15). *Id.*

20

Plaintiff further argues that the challenged exhibit is not hearsay because it has an "independent legal significance" and goes to whether Defendants are an integrated employer for Title VII purposes, therefore Plaintiff argues the "'verbal acts'[12] rule may also apply." (*Id.* (citations omitted).)

The Court finds the most serious of Defendants' objections to the challenged exhibit to be their hearsay objection. *Cf. Maryland Highways Contractors*, 933 F.2d at 1251. To that end, the Court finds that the letter contained in the challenged exhibit, (ECF No. 38-15), is an out of court statement, Fed. R. Evid. 801(c)(1), and the Court must therefore analyze whether the challenged exhibit is otherwise admissible. Fed. R. Evid. 801(c)(1)–(2), 803(8)(A)(i)–(iii). Under the Federal Rules of Evidence, verbal acts are declarations that are not hearsay because "the statement itself affects the legal rights of the parties or is a circumstance bearing on conduct affecting their rights." Fed. R. Evid. 801 Advisory Committee's Note to Subdivision (c). Further, the rule is meant to exclude those statements whose "significance . . . lies solely in the fact that it was made." *Id.* (citation omitted).

Although the letter contains what could be considered "verbal acts," namely statements regarding the rights of some members of TPC Utah's limited liability corporation against TPC Utah, those statements alone do not make the letter admissible. However, the verbal acts in the letter are evidence of neither Defendants operating as an integrated employer nor Plaintiff's retaliatory discharge claim. *See First Data Merch. Servs. Corp. v. SecurityMetrics, Inc.*, No. CIV.A. RDB-12-2568, 2014 WL 7409537, at *16 (D. Md. Dec. 30, 2014); *see also First Data*

---

[12] The Court notes that Plaintiff is likely referring to the *exclusion*, not exception, of "verbal acts" and "verbal parts of an act" from the hearsay rules. *See* Fed. R. Evid. 801(c)(1)–(2); Fed. R. Evid. 801 advisory committee's note to subdivision (c); *see also First Data Merch. Servs. Corp. v. SecurityMetrics, Inc.*, 672 F. App'x 229, 236–37 (4th Cir. 2016) (citing Fed. R. Evid. 801 advisory committee's note to subdivision (c)).

*Merch. Servs. Corp. v. SecurityMetrics, Inc.*, 672 F. App'x 229, 236–37 (4th Cir. 2016). Because the verbal acts in the letter are irrelevant to Plaintiff's burdens of proof, the Court must examine whether the portions of the letter which are not verbal acts, but remain hearsay, are admissible under any other relevant exception. *First Data Merch.*, 672 F. App'x at 237. The Court does not so find. *See* Fed. R. Evid. 803(8)(A)(i)–(iii). Therefore, the challenged exhibit, (ECF No. 38-15), cannot be considered in the resolution of Defendants' Motion for Summary Judgment. *See Maryland Highways Contractors*, 933 F.2d at 1251.

<h5>5.     Defendants' Objection to Plaintiff's Exhibit, (ECF No. 38-18), is Sustained</h5>

This objection pertains to Plaintiff's exhibit, (ECF No. 38-18), which Defendants challenge under Federal Rules of Evidence 901 and 106. (ECF No. 41 at 5–6.) The challenged exhibit, (ECF No. 38-18), appears to be unofficial excerpts or copies of documents related to Defendants' property agreements in several states. (ECF No. 38-18 at 2, 3–4, 5–10.)

Defendants argue that this challenged exhibit, (ECF No. 38-15), should be stricken and disregarded by this Court because it contains unofficial, incomplete, excerpts of several documents. (ECF No. 41 at 5–6 (citing Fed. R. Evid. 106, 901).) Plaintiff admits that these are excerpts of copies of documents she obtained from county recorder offices, and provides some of the unincluded pages, but that because of the limited purpose of the documents any missing pages "are likely immaterial." (ECF No. 43 at 7.) Plaintiff provides no other explanation for the purpose of these documents being provided. (*See id.*) Plaintiff further admits the documents have unofficial copy watermarks and argue that "Defendants however cannot genuinely contend that the pertinent language on the 'unofficial copy' [in the challenged exhibit] is going to be any different than the language of a purchased version of the same record." (*Id.*)

The Court finds that Plaintiff would be able to provide complete, official, versions of the documents contained in the challenged exhibit at trial and has already provided some missing pages from those documents. (*Id.*) Because Plaintiff has not identified the relevance of this exhibit, it leaves the Court unable to assess Plaintiff's purpose in offering this exhibit. (*See id.*) The Court further finds that Plaintiff has made no showing about how she would authenticate these documents, including who she would rely on to authenticate them; instead, Plaintiff simply says that they can be authenticated. (*See id.*) Accordingly, this challenged exhibit, (ECF No. 38-18), cannot be considered in the resolution of Defendants' Motion for Summary Judgment.

### 6. Defendants' Objection to Plaintiff's Exhibit, (ECF No. 38-19), is Sustained

This objection pertains to Plaintiff's exhibit, (ECF No. 38-19), which Defendants challenge under Federal Rules of Evidence 403, 404, 405 and 802. (ECF No. 41 at 6.) The challenged exhibit is an online article dated October 16, 2020, from the Jackson Progress-Argus, the title of which is: "Three Points Center establishing residential treatment center for adopted youth in Butts County." (ECF No. 38-19 at 2.) The challenged exhibit discusses the opening of TPC North Carolina, where the Facility is located, treatment services provided, and aspects of the programming available to the students there, among other things. (*Id.* at 3–4.)

Defendants argue that this challenged exhibit, (ECF No. 38-19), should be stricken and disregarded by this Court on the grounds of the rules of evidence listed above, but do not explain further. (ECF No. 41 at 6.) Plaintiff does not explain why the challenged exhibit should survive Defendants' evidentiary objection but asks that it be considered by the Court. (ECF No. 43 at 11.)

23

The challenged exhibit, (ECF No. 38-19), is another newspaper article written by a non-party; however, it contains statements made by one of Defendants' employees. As stated above, newspaper articles are hearsay when used to "prove the factual matters asserted therein." *ReBrook*, 58 F.3d at 967; *see also Greene*, 637 F. App'x at 751–52 (citing *Nooner*, 594 F.3d at 603). Plaintiff does not argue the article falls under a hearsay exception, such as the party opponent exception; however, even if she did, because the party opponent statements were conveyed in a newspaper article, the only applicable hearsay exception does not apply. *See* Fed. R. Evid. 801(d)(2); *see also Greene*, 637 F. App'x at 751–52. Accordingly, because this article is inadmissible hearsay, the challenged exhibit cannot be considered for Defendants' Motion for Summary Judgment. *Maryland Highways Contractors*, 933 F.2d at 1251.

### 7. Defendants' Objection to Plaintiff's Exhibit, (ECF No. 38-25), is Sustained

This objection pertains to Plaintiff's exhibit, (ECF No. 38-25), which Defendants challenge under Federal Rules of Evidence 901 and 403. (ECF No. 41 at 4–5.) The challenged exhibit, (ECF No. 38-25), contains one table and two charts. (ECF No. 38-25 at 2, 3–4.) The table in the challenged exhibit is titled "Corporate Timeline of Three Points Entity Defendants," and purports to catalog how the Defendant entities were created, dates of agreements between the entities, and purchases of property, among other things. (*Id.* at 2.) The two charts in the challenged exhibit are both titled "Information for Three Points Entity Defendants" and purport to describe the corporate form and business relationships between the Defendant entities. (*Id.* at 3–4.)

Defendants argue that this exhibit, (ECF No. 38-25), should be stricken and disregarded by this Court because the table and charts it contains were created by Plaintiff's counsel, includes his own commentary, and is unsupported by the record. (ECF No. 41 at 4–

5 (citing Fed. R. Evid. 403, 901).) Defendants further argue that "Counsel purports to cite to documents therein, but documents are not provided." (*Id.* at 4.) To address authentication, Plaintiff provided supplementary materials, citations and deposition excerpts, to support the statements made in the challenged exhibit. (ECF No. 43 at 4–5 (citing ECF Nos. 43-1; 43-2).) Plaintiff further argues that "nothing about [the table] is unfairly prejudicial or misleading" because the commentary therein is based on statements from depositions. (*See id.*)

As with an earlier exhibit, the main concern with the challenged exhibit, (ECF No. 38-25), is its ability to be authenticated in accordance with Rule 901 of the Federal Rules of Evidence. Fed. R. Evid. 901(a). The table and charts contained in the challenged exhibit, though reliant on discovery evidence, are Plaintiff's counsel's creations. Plaintiff's counsel would not be able to authenticate the challenged exhibit, and therefore, the challenged exhibit could not be presented in a form that would be admissible at trial, as Rule 56 requires. Fed. R. Civ. P. 56(c)(2). Therefore, the challenged exhibit, (ECF No. 38-25), cannot be considered in the resolution of Defendants' Motion for Summary Judgment and shall be stricken.

## C. Defendants' Objections to Conflicts Between Unsworn Witness Declarations and Depositions are Sustained in Part

Defendants next argue that Plaintiff, to create a factual dispute, "relies on her declaration [(ECF No. 36-1)], which contradicts her deposition testimony, [(ECF No. 41-1)]." (ECF No. 41 at 2.) Further, Defendants argue that Plaintiff's Declaration from Dr. Laurine Leblanc-White, (ECF No. 38-26), who is a former employee of TPC North Carolina, also contradicts her prior statements.[13] (ECF Nos. 41 at 2; 38-26 ¶¶ 3–4.) Plaintiff does not directly

---

[13] These initial statements, by Defendants' former employee, Dr. Laurine LeBlanc, were made on a recording Plaintiff made of her conversations on April 5, 2022. (ECF No. 41 at 7; *see also* ECF Nos. 33-6.) Because Dr. LeBlanc's prior statements were not made under penalty of perjury, the "sham

25

respond to Defendants' arguments about these witnesses' declarations. (*See generally* ECF No. 43.) However, Plaintiff generally argues that Defendants' objections are without merit. (*Id.* at 1, 2.)

Upon review of summary judgment motion, the district courts are not generally empowered to make determinations of the credibility of evidence. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 255 (1986). However, as noted above, the Court is empowered, upon objection of a party, to review the suitability of evidence for the Court's resolution of a summary judgment motion. *See* Fed. R. Civ. P. 56(c)(2).

Here, Defendants' arguments appear to this court to invoke the "sham affidavit" doctrine. *Zimmerman v. Novartis Pharms. Corp.,* 287 F.R.D. 357, 362 (D. Md. 2012) (citing *Cleveland v. Policy Mgmt. Sys. Corp.,* 526 U.S. 795, 806 (1999)); *see also In re Family Dollar FLSA Litig.,* 637 F.3d 508, 512–13 (4th Cir. 2011). The "sham affidavit" doctrine forbids "a party [from] create[ing] a genuine issue of fact sufficient to survive summary judgment simply by contradicting [her] own previous sworn statement (by, say, filing a later affidavit that flatly contradicts that party's earlier sworn deposition) without explaining the contradiction or attempting to resolve the disparity." *Cleveland,* 526 U.S. at 806 (collecting cases). The purpose of the "sham affidavit" doctrine is to protect "the utility of summary judgment as a procedure for screening out sham issues of fact." *Hannah v. United Parcel Serv., Inc.,* 72 F.4th 630, 638 (4th Cir. 2023) (quoting *Barwick v. Celotex Corp.,* 736 F.2d 946, 960 (4th Cir. 1984) (additional citations omitted). However, the doctrine applies only where there is "a bona fide inconsistency" between a party's sworn statements. *Libertarian Party of Va. v. Judd,* 718 F.3d

---

affidavit" doctrine does not apply; therefore, Dr. LeBlanc's prior statements will not be stricken. *In re Family Dollar FLSA Litig.,* 637 F.3d 508, 512–13 (4th Cir. 2011).

308, 314 n.6 (4th Cir. 2013) (quoting *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 185 n.7 (4th Cir. 2001)). In the case of a "bona fide inconsistency," the remedy is to strike the later-given testimony. *See In re Family Dollar*, 637 F.3d at 513.

Defendants argue that Plaintiff contradicts her deposition testimony by submitting a declaration that states Director Butcher was her supervisor, not Shift Supervisor Gschwind. (ECF No. 41 at 10.) In her deposition on February 24, 2024, Plaintiff repeatedly states that Shift Supervisor Gschwind was her supervisor. (*See generally* ECF No. 41-1.) In her July 22, 2024, declaration, Plaintiff portrays Director Butcher as her only supervisor and Shift Supervisor Gschwind as "another Group Living staff member." (ECF No. 38-28 ¶¶ 3, 4, 14.) The Court finds this to be a material and "bona fide inconsistency" between Plaintiff's two sworn statements. *Judd*, 718 F.3d at 314 n.6 (citation omitted). Accordingly, the conflict between Plaintiff's unsworn declaration and deposition is resolved in favor of Plaintiff's deposition. *In re Family Dollar*, 637 F.3d at 513. This finding is also reflected above in the Court's factual background section.

## III.   DEFENDANTS' MOTION FOR SUMMARY JUDGMENT IS GRANTED

The Court will now consider the merits of the Defendants' Motion for Summary Judgement based on these rulings.

### A.      Standard of Review

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party." *Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 568 (4th Cir. 2015) (internal quotations omitted) (internal citations omitted). "[I]n deciding a motion for summary judgment, a district court is required to view the evidence in the light most favorable to the

27

nonmovant" and to "draw all reasonable inferences in his favor." *Harris v. Pittman*, 927 F.3d 266, 272 (4th Cir. 2019) (citing *Jacobs*, 780 F.3d at 568). A court "cannot weigh the evidence or make credibility determinations," *Jacobs*, 780 F.3d at 569 (citations omitted), and thus must "usually" adopt "the [nonmovant's] version of the facts," even if it seems unlikely that the nonmoving party would prevail at trial. *Witt v. W. Va. State Police, Troop 2*, 633 F.3d 272, 276 (4th Cir. 2011) (internal quotation marks omitted) (quoting *Scott v. Harris*, 550 U.S. 372, 378 (2007)).

Where the nonmovant will bear the burden of proof at trial, the party seeking summary judgment bears the initial burden of "pointing out to the district court . . . that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party carries this burden, then the burden shifts to the nonmoving party to point out "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). In so doing, "the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence." *Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013) (citing *Liberty Lobby,* 477 U.S. at 252 (additional citation omitted). Instead, the nonmoving party must support its assertions by "citing to particular parts of . . . the record" or "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1)(A)–(B); *see also Celotex*, 477 U.S. at 324.

Defendants argue that Plaintiff cannot raise a genuine issue of fact to support her claims of retaliatory discharge. (ECF No. 33 at 19.) Plaintiff argues that genuine issues of material fact exist on both her retaliatory discharge claims and whether the entity Defendants

28

operated as Plaintiff's integrated employer. (*See* ECF No. 36 at 10, 12, 13, 14, 17.) The Court will address the parties' arguments in turn.

## B. No Genuine Dispute of Material Fact Exists as to Plaintiff's Retaliation Claims

"Title VII renders it 'an unlawful employment practice for an employer . . . to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.'" *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 276–77 (4th Cir. 2015) (citing 42 U.S.C. § 2000e–2(a)(1)). A retaliatory discharge claim can be proven with direct evidence or by circumstantial evidence through the *McDonnell Douglas* burden shifting framework. *Foster v. Univ. of Maryland-E. Shore*, 787 F.3d 243, 249 (4th Cir. 2015) (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973)). Plaintiff does not appear to offer direct evidence of retaliation and instead relies on the application of the *McDonnell Douglas* framework to prove her claim. (*See* ECF No. 36 at 7.)

"To prevail under the *McDonnell Douglas* framework, a Plaintiff must first establish a prima facia case." *Roberts v. Glenn Indus. Grp., Inc.,* 998 F.3d 111, 122 (4th Cir. 2021) (citing *Foster*, 787 F.3d at 250) (additional citation omitted). "To establish a prima facie case of retaliation in contravention of Title VII, a plaintiff must prove '(1) that she engaged in a protected activity,' as well as '(2) that her employer took an adverse employment action against her,' and '(3) that there was a causal link between the two events.'" *Boyer-Liberto*, 786 F.3d at 281 (quoting *EEOC v. Navy Fed. Credit Union,* 424 F.3d 397, 405–06 (4th Cir. 2005)). "A prima facie retaliation claim under 42 U.S.C. § 1981 has the same elements." *Boyer-Liberto*, 786 F.3d at 281 (citing *CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 446 (2008)) (additional citation omitted).

29

If Plaintiff can establish a prima facie case, the burden then shifts to the employer to show that it took its adverse action for a legitimate, nonretaliatory reason. *Roberts,* 998 F.3d at 122. If the employer makes that showing, the burden shifts back to Plaintiff to rebut the employer's evidence by demonstrating the employer's purported nonretaliatory reason was merely a pretext for discrimination. *Id.*

Title VII protects persons from retaliation for engaging in two kinds of activities: opposition and participation. *See Netter v. Barnes*, 908 F.3d 932, 937 (4th Cir. 2018); *see also Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998) (citing 42 U.S.C.A. § 2000e–3(a)). Plaintiff argues that she engaged in oppositional protected activity. (*See* ECF No. 36 at 11.) Employees engage in protected oppositional activity when, inter alia, they "complain to their superiors about suspected violations of Title VII." *Boyer-Liberto*, 786 F.3d at 281 (internal quotation marks omitted) (quoting *Bryant v. Aiken Reg'l Med. Ctrs. Inc.,* 333 F.3d 536, 543–44 (4th Cir.2003)). Accordingly, "Title VII proscribes discrimination against an employee because, in relevant part, she 'has opposed any practice made an unlawful employment practice by this subchapter.'" *Boyer-Liberto*, 786 F.3d at 281 (quoting 42 U.S.C. § 2000e–3(a)). The Court first examines whether Plaintiff has established a prima facie case of retaliation.

1.  <u>Plaintiff Has Failed to Show that She Engaged in Protected Activity</u>

"Protected activity under Title VII includes complaints of discrimination based upon 'race, color, religion, sex or national origin.'" *Roberts,* 998 F.3d at 122 (quoting *Landino v. Sapp,* 520 F. App'x. 195, 198 (4th Cir. 2013) (quoting *Balazs v. Liebenthal*, 32 F.3d 151, 159 (4th Cir. 1994)). Utilizing informal or formal company grievance procedures to make complaints may constitute protected activity. *See Laughlin*, 149 F.3d at 259; *Roberts,* 998 F.3d at 122. However,

30

not every complaint that mentions discrimination in passing is protected activity under Title VII. *See Laughlin*, 149 F.3d at 259–60.

Defendants argue that Plaintiff did not engage in protected activity during her April 6, 2022, conversation with Director Butcher because it was objectively unreasonable for Plaintiff to believe that the Incident, wherein Defendant Palmer used the "N" word in the April 5, meeting with students, was an unlawful employment practice. (ECF No. 33 at 20.) Plaintiff contests that the Incident occurred during a group therapy session and that "a 19-year-old [B]lack woman paid $14 per hour to take care of 'troubled teens' was aware of [Defendant Palmer's] stated therapeutic purpose [for saying the "N" word]." (ECF No. 36 at 11.) Plaintiff further argues that even if the Incident occurred during a group therapy session, a trier of fact could still find Plaintiff's opposition to the Incident to be reasonable and that her recording on April 5, 2022 "was also a good faith opposition [to] something she reasonably believed may qualify as an unlawful employment practice." (*Id.* at 11, 25 (citation and internal quotation marks omitted).)

Contrary to Plaintiff's assertion that the meeting between Defendant Palmer and students was not a therapy session, this Court concludes that the record evidence supports that the session in which the Incident occurred, was in fact a group therapy session. (ECF No. 33-4 ¶ 6; *see also* ECF No. 33-13 at 137:1-5.) Further, record evidence supports that Plaintiff was, made aware of why Defendant Palmer used the "N" word during the group therapy session; and more specifically her own statements reflect she was aware that Defendant Palmer did not say the "N" word with racial animus. (ECF No. 33-39 at 8:2–9:13.) Therefore, the sole issue related to the first element of Plaintiff's prima facie case is whether

Plaintiffs actions on April 5 and 6, 2022 amounted to "protected activity" as defined by case law for Title VII claims.

Plaintiff identifies two specific actions that she took, one on April 5 and the other on April 6, which she contends qualify as protected activity. The first occurred on April 5, 2022, when Plaintiff returned to the Facility, and while the session between Defendant and the students was still occurring, Plaintiff began to record the group therapy session. (ECF No. 33-10 at 242:20–243:5.) The second action Plaintiff contends constituted protected activity was her statements to Director Butcher on April 6, 2022, about the Incident. (ECF No. 36 at 11–12, 25.)

This Court concludes that Plaintiff's April 5, 2022, recording of the meeting in which Dr. Palmer said the "N" word was not protected activity under Title VII because it did not constitute, nor was it used to, make a complaint of any kind about discrimination or other unlawful employment practices under Title VII. *Roberts,* 998 F.3d at 122. According to record evidence, Plaintiff stated that she intended to get Defendant Palmer to say the "N" word again during the session while she was recording, but it did not occur. (ECF No. 33:10 at 242:23–243:5.)

Next, the Court will consider whether Plaintiff's meeting with Director Butcher constitutes protected activity. In her conversation with Director Butcher, Plaintiff made several statements about her co-workers and workplace, however, she does not allege that they all were protected activities. (*See* ECF No. 36 at 10–11.) It is not the role or responsibility of this Court to scour each line of this conversation to see if *any* statement could be *construed* as protected activity. Rather, the Court will address only what Plaintiff *argues* was protected activity under Title VII. Immediately prior to the alleged protected activity, Plaintiff's April 6,

32

2022, meeting with Director Butcher began with her remarking about how another Youth Mentor, Charlie Brackett, only follows directions but does not raise his voice when he perceives a wrong. (ECF No. 33:39 at 7:1–8:1.)

Plaintiff and Director Butcher's conversation regarding the Incident that Plaintiff identifies as protected activity, (ECF No. 36 at 11), with some additional dialogue for context, is reproduced below:

> "**Plaintiff:** I'm like, [Charlie Brackett] if you feel like something was done unfairly, even to yourself - -
>
> **Director Butcher:** Yeah.
>
> **Plaintiff:** - - then say it. Like the whole [Defendant Palmer] saying the ["N" word].
>
> **Director Butcher:** Yeah.
>
> **Plaintiff:** Like, you [sic] what I'm saying? It was like, I know that it wasn't [Defendant Palmer's] intent to be like, oh - -
>
> **Director Butcher:** Oh, he knows when he - - he knows when to - - he stays put.
>
> **Plaintiff:** Yeah.
>
> **Director Butcher:** And that's when he was like - - he said, oh, I shouldn't say that word. But then again, I always tell people, like, no, there's no excuse to use that word. At the same time, it's like you have to - - you know why he did say it; there was zero malicious, like, intent to hurt or upset anyone.
>
> **Plaintiff:** Uh-huh.
>
> **Director Butcher:** Like you were saying, let's try and promote it, say - - but he probably went about it the wrong way. He shouldn't say the word, but there's no hate in his heart behind it. He wasn't trying to be offensive to you or anyone else. You know what I mean?
>
> **Plaintiff:** Uh-huh.
>
> **Director Butcher:** Oh, well - - oh, you're right. Like you shouldn't say that word, that's for sure.

33

**Plaintiff:** Yeah. But like that didn't really bug me as bad as like the other situation. And then like - - and then like, for example, me, [Shift Supervisor Gschwind], [Charlie Brackett], [Youth Mentor Sharecka Brewer], [Youth Mentor Avery McLaurin] all sitting there the day before and had this conversation with Charlie. We was like [Charlie Brackett], we understand you want to follow everything by the book. We get that. But this constantly, every situation that happens - -

**Director Butcher:** Yeah.

**Plaintiff:** - - you call [Shift Supervisor Gschwind]. And we was like, that's not - - you know what I'm saying? Like, you can't stand on your own two feet."

(ECF No. 33-39 8:2–9:13.)

This Court must analyze (1) was Plaintiff opposing an unlawful employment practice under Title VII; and if it was not an unlawful employment practice under Title VII, could Plaintiff still reasonably believe she was opposing unlawful employment practices. *Boyer-Liberto*, 786 F.3d at 282. The Court first finds that oppositional activity can take the form of an employee's use of informal grievance procedures, such as Plaintiff did by communicating with Director Butcher. *See Cosby v. S.C. Prob., Parole & Pardon Servs.*, 93 F.4th 707, 719 (4th Cir. 2023) (citing *DeMasters v. Carilion Clinic*, 796 F.3d 409, 417 (4th Cir. 2015)). As to whether Plaintiff is opposing an "unlawful employment practice," the Fourth Circuit has said that "the term 'unlawful employment practice' should be interpreted broadly." *Id.* (citing *DeMasters*, 796 F.3d at 417). Yet, even when viewing the facts in the light most favorable to Plaintiff, the Court concludes that what Plaintiff opposed was not an unlawful employment action under Title VII. 42 U.S.C. § 2000e-3(a). Title VII does not prohibit employers from admonishing others about their use of racial slurs. *Id.* Therefore, the plain language of the statute does not suggest anything unlawful was done on this occasion. *See id.*

However, the Fourth Circuit has noted that its "broad interpretation" of the term "unlawful employment practice" includes "not only employment actions actually unlawful

34

under Title VII but also employment actions [the employee] reasonably believes to be unlawful." *Cosby*, 93 F.4th at 719 (citing *DeMasters*, 796 F.3d at 417); *see also Boyer-Liberto*, 786 F.3d at 282 (quoting *Navy Fed. Credit Union*, 424 F.3d at 406). However, this "broad interpretation is not without limits." *Cosby*, 93 F.4th at 719. Plaintiff must have an "objectively reasonable belief in light of all the circumstances that a Title VII violation has happened" for their opposition activity to be protected. *McIver v. Bridgestone Ams., Inc.*, 42 F.4th 398, 411 (4th Cir. 2022) (quoting *Boyer-Liberto*, 786 F.3d at 282) (internal citations omitted). Plaintiff must point to specific evidence in the record that would permit a jury to infer that Plaintiff's complaints were related to a Title VII violation. *Cosby*, 93 F.4th at 719 (citing *id.* at 412).

The Court acknowledges in no uncertain terms that the use of racial slurs, in any form, are not permissible in the workplace. *Boyer-Liberto*, 786 F.3d at 280. However, the issue before this Court is whether the Incident, its surrounding circumstances, and Plaintiff's statement about it to Director Butcher, constitute protected activity under Title VII. *See McIver*, 42 F.4th at 411. To that end, there is language to suggest that both Plaintiff and Director Butcher believed it was inappropriate for Defendant Palmer to say the "N" word when he was prohibiting the students from using it and perhaps should have prohibited it without reference to the slur itself. (ECF No. 33-39 at 8:2–9:13.)

"[I]n light of all the circumstances" the Court finds that it is not objectively reasonable for Plaintiff to believe her opposition to this conduct was protected under Title VII. *McIver*, 42 F.4th at 411. Defendant Palmer was prohibiting students' use of the word; and he only did so after several incidents of students using the word, which was causing ongoing conflict among the students in the Facility. (ECF Nos. 33-1 ¶ 4; 33-3 ¶ 9; 33-13 at 136:7–137:5.) Further, none of the Facility employee declarations state that Defendant Palmer used the word

35

in a discriminatory way, or in any way other than to admonish students from using it. (ECF Nos. 33-1 ¶ 6; 33-3 ¶ 11; 33-4 ¶ 8.) In light of these circumstances surrounding the Incident and Plaintiff's own description of the Incident, there is no basis for a jury to infer that Plaintiff believed she was opposing unlawful employment practices. (ECF No. 33-39 at 8:2–9:13.) Plaintiff repeatedly agreed that she did not believe Defendant Palmer wished to cause offense and even stated that the Incident did not bother her as much as another Youth Mentor, Charlie Brackett, reporting issues too often to Shift Supervisors. (*Id.*)

Accordingly, this Court concludes that Plaintiff has failed to show that she engaged in oppositional protected activity and further has not shown there are genuine issues of material fact from which a reasonable juror could find that Plaintiff engaged in oppositional protected activity in response to an unlawful employment practice in violation of Title VII.

Even assuming that Plaintiff had established protected activity, her prima facie case still fails. Defendants do not challenge that an adverse employment action was taken against Plaintiff, that being her April 6, 2022, termination. (*See generally* ECF No. 33.) However, Defendants do, in fact challenge the causal connection between Plaintiff's alleged protected activity and the adverse action taken against her. (ECF No. 33 at 20–21, 21–22.) Thus, the Court next examines whether Plaintiff has established a causal relationship between her alleged protected activity and her April 6, 2022, termination.

2.  Plaintiff Has Failed to Show a Causal Relationship Between her Protected Activity and Termination

To establish a causal relationship between a plaintiff's protected activity and the adverse employment activity, a plaintiff must show their employer "took the adverse action *because* of the protected activity." *Roberts,* 998 F.3d at 123 (quoting *Bryant v. Aiken Reg'l Med. Ctrs., Inc.,* 333 F.3d 536, 543 (4th Cir. 2003)) (emphasis in original) (internal quotation marks omitted)

(additional citation omitted). "[A] plaintiff must show that the decision maker was aware of the protected activity at the time the alleged retaliation occurred." *Id.* at 124 (citations omitted); *see also Constantine v. Rectors and Visitors of George Mason Univ.*, 411 F.3d 474, 501 (4th Cir. 2005) (citing *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998)). Thereafter, a causal link can be established by establishing either or both of the following: (1) the existence of facts that suggest the adverse action occurred because of the protected activity or (2) a showing that the adverse employment action is sufficiently close in time to the protected activity. *Roberts,* 998 F.3d at 123 (internal citations omitted). The standard for establishing causation at the prima facie stage is less onerous than but-for causation. *See Foster*, 787 F.3d at 251 (citation omitted). Often when an adverse action is taken shortly after protected activity reasonable inference of causation is permissible. *Dowe*, 145 F.3d at 657 (4th Cir. 1998).

"Since, by definition, an employer cannot take action because of a factor of which it is unaware, the employer's knowledge that the plaintiff engaged in a protected activity is absolutely necessary to establish the third element of the prima facie case." *Dowe*, 145 F.3d at 657 (citation omitted); *see also Roberts*, 998 F.3d at 124. The Fourth Circuit has "consistently required proof of a decisionmaker's knowledge of protected activity to support a Title VII retaliation claim." *Roberts*, 998 F.3d at 124. To determine there was a causal relationship between protected activity and Plaintiff's termination, "a plaintiff must show that the decisionmaker was aware of the protected activity at the time the alleged retaliation occurred." *Id.* (citations omitted).

Defendants first argue that Plaintiff's § 1981 claim against Defendant Palmer fails because Plaintiff cannot establish that he was involved in Plaintiff's termination at all. (ECF

No. 33 at 19–20.) Plaintiff argues that because Defendant Palmer was a director at the Facility and Director Butcher's father-in-law, the Court can infer that he was involved in Plaintiff's termination. (ECF No. 36 at 11, 21.) Plaintiff has provided no record evidence to support its claim that Defendant Palmer directed Director Butcher to fire Plaintiff. Nor, upon the Court's own review, is there any evidence in the record that suggest Defendant Palmer was aware of either Plaintiff's protected activity—her surreptitious recording of the April 5, 2022, group therapy session and her April 6, 2022, conversation with Director Butcher—or that Defendant Palmer had any role in Plaintiff's termination.

Defendants also argue that Plaintiff cannot demonstrate that the employee who recommended her termination, Shift Supervisor Gschwind, had actual knowledge of her alleged protected activity. (ECF No. 33 at 21.) In response, Plaintiff disputes that her termination was initiated by Shift Supervisor Gschwind and that it was done in accordance with Defendants' attendance discipline policy. (ECF No. 36 at 13, 14–15.) Plaintiff also argues that the close temporal proximity between Plaintiff's termination and her alleged protected activity allows for an inference of causation. (*Id.* at 12.)

The Court concludes that the record does not support that anyone other than Shift Supervisor Gschwind initiated Plaintiff's termination procedure. (ECF Nos. 33-2 ¶¶ 14–15; 33-6 ¶ 16.) Plaintiff also provided no record evidence that Director Butcher initiated Plaintiff's termination procedure. The record instead reflects that Shift Supervisor Gschwind, recommended Plaintiff's termination to Director Butcher on April 6, 2022, before Plaintiff's conversation with Director Butcher and before anyone was made aware of her secret recording on April 5, 2022. (ECF Nos. 33-2 ¶¶ 14–15; 33-6 ¶ 16.) Plaintiff also provided, and the Court cannot find, record evidence to support that Shift Supervisor Gschwind was aware of

38

Plaintiff's alleged protected activity before recommending Plaintiff's termination. Further, there is no indication in the record that when his termination notice was approved by Director Butcher, that Shift Supervisor Gschwind was made aware of Plaintiff's alleged protected activity. Regardless, the Fourth Circuit has held that the causation analysis centers on "what the relevant decisionmaker knew at the time of the adverse employment action, not on any knowledge other employees may have had that could be imputed to the employer." *Roberts*, 998 F.3d at 124 (citing *Dowe*, 145 F.3d at 657) (additional citations omitted in original).

Further, the record also does not support that Plaintiff's termination violated Defendants' attendance discipline policy. According to the Employee Manual, an employee's termination based on attendance violations did not *require* two written warnings as Plaintiff claims. (ECF Nos. 33-18 at 6; 33-19 at 4.) Rather, an employee *could* be terminated following two written warnings, but that these were guidelines not requirements; further, the Employee Manual specifically disclaims that employees may be fired for termination violations that are otherwise severe. (ECF No. 33-19 at 4.) In addition, the record reflects the severity of Plaintiff's attendance violations, the lack of attendance violations of those similarly situated to her, and the termination and suspension of Youth Mentors on the basis of attendance violations. (*Compare* ECF No. 33-22 at 2–4, 5 *with* ECF Nos. 33-24 at 2; 33-25 at 2–3; 38-16 at 10–11, 12; *see also* ECF No. 38-9 at 3–5.)

Therefore, even though the time between Plaintiff's alleged oppositional activity and her termination is a matter of hours, the evidence in the record that establishes the person who initiated her termination did so before Plaintiff's alleged protected activity occurred and accordingly was done without knowledge of her protected activity. *See Roberts*, 998 F.3d at 124 (citing *Dowe*, 145 F.3d at 657) (additional citations omitted in original).

Finally, even if Plaintiff could establish a prima facie case of retaliation, her retaliation claim would nonetheless flounder on the remaining steps of the *McDonnell Douglas* test, which the Court considers below.

### 3. Defendants Have Established Legitimate and Non-Discriminatory Reasons for Terminating Plaintiff

Defendants argue that the "but-for" cause of Plaintiff's termination was "excessive tardiness" and "no-shows" at work. (ECF No. 33 at 15–16, 21.) Defendants provide evidence that Plaintiff's direct supervisor, Shift Supervisor Gschwind, wished to recommend the termination of Plaintiff in both March of 2022 and on April 6, 2022, based on her attendance. (ECF No. 33 at 9, 21.) Defendant further supports those reasons with evidence of Plaintiff's documented attendance violations. Plaintiff argues that Defendants cannot provide legitimate, non-discriminatory reasons for her termination, and to the extent that they do, those reasons are pretext for retaliatory animus. (*See* ECF No. 36 at 10, 13–15.)

Only where a prima facie case of retaliation is established, the burden then shifts to the employer to produce a legitimate, non-discriminatory reason for the adverse action. *Laber v. Harvey*, 438 F.3d 404, 430 (4th Cir. 2006) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000); *McDonnell Douglas*, 411 U.S. at 802–03). In evaluating Defendants' proffered reasons, this Court cannot "sit as a kind of super-personnel department weighing the prudence of employment decisions made by firms charged with employment discrimination." *DeJarnette v. Corning Inc.*, 133 F.3d 293, 299 (4th Cir. 1998) (citations omitted). It is not the province of this Court to "decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination." *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 279 (4th Cir. 2000) (citing *DeJarnette*, 133 F.3d at 299) (internal quotation marks omitted).

The Fourth Circuit has repeatedly recognized that a plaintiff's inability to meet job performance expectations are legitimate, non-discriminatory reasons for an employer to take an adverse employment action against a plaintiff. Defendant has made an offer of proof that reflects that Youth Mentors, such as Plaintiff, were required to be on time or early to begin their hourly positions. (ECF Nos. 33 at 3; 33-18 at 6; 33-19 at 4.) In addition, Defendants have shown that Youth Mentors were not permitted to leave their shift early without permission from their Shift Supervisor and were not permitted to be absent from work without coverage or adequate notice (a "no show"). (ECF Nos. 33-18 at 6; 33-19 at 4.) Defendants have also shown that employees were formally and informally reprimanded for attendance violations. (ECF Nos. 38-9 at 3–5.)

As applied to Plaintiff, Defendants have shown that Plaintiff violated that policy when Plaintiff: (1) was late to work sixteen times from January 1, 2022, to her termination of April 6, 2022; (2) left work early twice without permission during the same period; and (3) was a "no-show" at work three times during the same period. (ECF No. 33 at 16; *see also* ECF No. 33-22 at 2–4.) Defendants have shown that Plaintiff was formally reprimanded, in a write-up that she had repeatedly violated the attendance policy. (ECF No. 33-21 at 2.) In addition, Defendants have shown that Plaintiff's attendance issues were reflected in her 90-day performance evaluation. (ECF No. 33-20 at 3.) Finally, Defendants have shown that six of her late arrivals, both of her early departures, and one of her no-shows occurred after her formal reprimand from her performance evaluation and attendance violation write-up on February 22, 2022. (*See* ECF No. 33-22 at 2–4)

Given the foregoing, this Court concludes that Defendant has met its burden of proof to establish legitimate and non-discriminatory reasons for terminating Plaintiff.

41

4.  Plaintiff Has Not Established that Defendants' Established Reasons
    for Firing her Were Pretext for Discrimination

Plaintiff argues that "Defendants' proffered reasons" for Plaintiff's termination, namely that "she was chronically late, should be rejected." (ECF No. 36 at 10) (internal quotation marks omitted). Plaintiff argues that in firing her Defendants deviated from their attendance discipline policy, and further, other attendance write-ups in the record show that Plaintiff's infractions were not what the Facility considered to be serious. (*Id.* at 12–13, 15.) Further, Plaintiff argues that her supervisors valued "reliability" instead of "punctuality." (*Id.* at 14.) Finally, Plaintiff argues that text messages in the record reflect that Shift Supervisor Gschwind wished to give Plaintiff a write-up based on an incident with Shift Supervisor Locke, not her attendance. (*Id.*)

To carry the burden of proving pretext, a plaintiff must establish "both that the [employer's] reason was false, and that [retaliation] was the real reason for the challenged conduct." *Foster*, 787 F.3d at 252 (quoting *Jiminez v. Mary Washington Coll.*, 57 F.3d 369, 378 (4th Cir. 1995) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993)) (alterations in original). The showing must reflect that plaintiff's protected activity was the but-for, direct cause of the adverse employment action. *Id.* However, evidence may include that which calls into question the honesty of the plaintiff's supervisor's belief that plaintiff was not meeting their employer's expectations, the expectations can be discredited as inconsistent and contradictory, or that the expectations were designed to hide retaliatory animus. *DeJarnette*, 133 F.3d at 299; *see also Jacobs*, 780 F.3d at 575.

First, the Plaintiff cannot prove that Defendants deviated from their attendance policy in firing her. To support this argument Plaintiff primarily claims that after her first written

warning about her attendance policy, that a second written warning was supposed to be given before firing her. (ECF No. 36 at 13.) However, as Plaintiff conceded in her argument, the Employee Manual and Handbook, "contemplates" a second warning, but a second warning is not required. (*Id.*) Moreover, this Court's own review of the evidence reflects that Plaintiff's poor attendance could have justified her immediate firing, including any one of her three "no-shows." (ECF Nos. 33-18 at 6; 33-19 at 4.) Further, the record reflects that Shift Supervisor Gschwind sought to terminate Plaintiff for her attendance violations in March 2022, before her alleged protected activity. (*See* ECF No. 33-2 ¶ 6.) Therefore, even if a second warning were required to terminate Plaintiff for her attendance issues, which is not true, this alone is not evidence of pretext because it does not show that Defendants were dishonest in firing her on attendance grounds or otherwise used her attendance violations to hide retaliatory animus. *See Hawkins*, 203 F.3d at 280 (citing *DeJarnette*, 133 F.3d at 299).

Plaintiff also does not meet her burden by simply gesturing at others' attendance violations which did not result in termination. Plaintiff must provide sufficient evidence that would allow a reasonable factfinder to conclude that, from the perspective of the decisionmaker, Plaintiff was fired for unlawful reasons. *See Adkins v. CSX Transp., Inc.*, 70 F.4th 785, 793, 794 (4th Cir. 2023) (quoting *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 217 (4th Cir. 2007)) (internal citation omitted). Thus, when Plaintiff points out the flaws in her coworkers, she does not rebut Defendants' arguments that she severely violated the attendance policy, received previous feedback about her attendance violations, or otherwise disprove that attendance was the but for cause of her termination. Instead, she is questioning the merits of Defendants' evaluation of her work, which this Court is not in a position to evaluate. *Hawkins*, 203 F.3d at 280 (citing *DeJarnette*, 133 F.3d at 299) (additional citation omitted).

43

Plaintiff's additional argument that Shift Supervisor Gschwind also wished to write-up Plaintiff for her involvement in a verbal altercation April 5, 2022, with Shift Supervisor Locke rather than attendance is also unavailing. It is true that the Fourth Circuit has found that when an employer's explanations can be discredited as inconsistent and contradictory, this may allow for an inference of pretext. *Jacobs*, 780 F.3d at 576. However, the inconsistencies this Court must look for are in the explanations given to Plaintiff for her termination or inconsistencies between the reason offered to Plaintiff and those provided to this Court in litigation. *Id.* Defendants have never represented to Plaintiff that she was fired as a result of her altercation with Shift Supervisor Locke only that it was a result of her attendance violations. (ECF No. 33 at 15–16.) Nor have Defendants represented to this Court that Plaintiff was fired for anything other than her attendance violations. (*Id.*)

Further, Plaintiff has not provided any evidence that her job performance was other than what the Defendants have established in their showing. A plaintiff may fail to prove pretext when they fail "to supply evidence that [their employer] actually believed [their] performance was good," which can include poor performance on work evaluations and informal indicia of an employer's dissatisfaction with the plaintiff's performance. *Hawkins*, 203 F.3d at 279, 280 (citing *DeJarnette*, 133 F.3d at 299). Plaintiff cannot make this showing simply by making a conclusory statement that her, and others' reliability, was what her employers cared about, not their lateness. *Hawkins*, 203 F.3d at 280 (4th Cir. 2000) (finding the decisionmaker's perspective of Plaintiff's work, not her "self-assessment" that is relevant) (quoting *DeJarnette*, 133 F.3d at 299 (4th Cir. 1998) (quoting *Evans v. Tech. Applications & Serv. Co.*, 80 F.3d 954, 960–61 (4th Cir. 1996)) (additional citation omitted). The record evidence of Plaintiff's evaluations and write ups, contradict her argument. Instead, the record reflects

44

that Plaintiff's supervisors and coworkers alike agreed that Plaintiff was frequently late to work, her attendance violations were documented and penalized, and though Plaintiff had great relationships with her students, her workplace conduct did not meet the Facility's job performance standards for Youth Mentor timeliness.

Therefore, this Court finds that there is no evidence to support Plaintiff's assertion that Defendants' proffered legitimate nondiscriminatory reasons are dishonest or are motivated by retaliatory animus." *See Foster*, 787 F.3d at 252.

## IV. CONCLUSION

Summary judgment "is mandated where the facts and the law will reasonably support only one conclusion," which is that there are no genuine issues of material fact that would allow a reasonable jury to find in favor of Plaintiff on her claim of retaliatory discharge. *Hawkins*, 203 F.3d at 279 (quoting *McDermott Int'l, Inc. v. Wilander*, 498 U.S. 337, 356 (1991)) (internal quotation marks omitted). The Court so finds here. The record before this Court shows that Plaintiff cannot meet her ultimate burden of proving to a reasonable jury that she has been a victim of intentional retaliation. *See Foster*, 787 F.3d at 252. Accordingly, Defendants are entitled to judgment as a matter of law on Plaintiff's claims of retaliation under Title VII and 42 U.S.C. § 1981. *See* Fed. R. Civ. P. 56(c).

Defendants' Motion for Summary Judgment on all claims will be granted.

For the reasons stated herein, the Court enters the following:

## ORDER

**IT IS THEREFORE ORDERED** that Defendants' Motion for Summary Judgment, (ECF No. 32), is **GRANTED** and Plaintiff's claims are **Dismissed**.

**IT IS FURTHER ORDERED** that for the reasons outlined in the attached memorandum this Court did not consider the following exhibits, **ECF Nos. 38-6, 38-11, 38-12, 38-15, 38-18, 38-19, 38-25, 39-1, 39-2, 39-3, and 39-4,** for the resolution of Defendants' Motion for Summary Judgment, (ECF No. 32).

This, the 7th day of April 2025.

/s/ Loretta C. Biggs
United States District Judge